UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CHRISTIAN AUGUSTINE,

    Plaintiff,

    v.

NIEL C. OLSON, *et al*.,

    Defendants.

Case No. 2:25-CV-00215-GSL-APR

## OPINION AND ORDER

This matter is before the Court on Defendants' Niel C. Olson and Town of St. John's Motion to Dismiss [DE 14] filed on August 7, 2025. Plaintiff, Christian Augustine, filed his response [DE 20] on August 26, 2025, and Defendants replied [DE 21] on September 2, 2025. For reasons set forth below, the Motion is **GRANTED**.

### Background

*Factual History*

Plaintiff is an adult male who has been diagnosed with autism. [DE 1, ¶ 9]. While he was enroute to his home in Georgia, Defendant Niel C. Olson ("Defendant Olson") stopped Plaintiff's vehicle for alleged traffic violations. [*Id*. at ¶ 10]. The stop occurred on July 22, 2023, in St. John, Lake County, Indiana. [*Id*.]. Plaintiff claims that upon being stopped, he informed Defendant Olson of his autism diagnosis, as evidenced in bodycam footage. [*Id*. at pg. 1]. Also apparent in the bodycam footage, Plaintiff claims, is evidence of Officer Olson "mock[ing] and laugh[ing]" at his disability. [*Id*.]. Plaintiff states that despite registering a zero on a field sobriety test, Defendant Olson believed him to be "under the influence of something significant," and therefore "seized [] Plaintiff without probable cause, plac[ed] him in handcuffs [and] [] transported him to a local hospital for a blood draw." [*Id*. at ¶¶ 13-14]. After the blood draw, Plaintiff was taken to the Lake

County Jail where he spent two days, which Plaintiff claims "could have only been because [he] was 'On the Spectrum.'" [*Id*. at ¶¶ 15-17].

*Procedural History*

As a result of the above-described traffic stop, Plaintiff filed this lawsuit on May 12, 2025, against Defendants Olson, a St. John police officer, the Town of St. John, Indiana ("St. John"), and two unidentified members of the St. John Police Department – Officer John Doe and Supervisor John Doe. [DE 1 at ¶ 4]. Plaintiff alleges that Defendants committed various constitutional violations, as well as violations of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA") during the stop. *See generally* [*Id*.]. More specifically, he claims that he was "arrested, seized, and jailed … holding that [his a]utistic presentation was drunkenness although a 'reasonable' police officer would have immediately noticed that [he] [wa]s [a]utistic." [*Id*. at pg. 1].

Defendant Olson and St. John filed the instant Motion arguing, *inter alia*, that Plaintiff's Complaint fails to state a claim because probable cause for the arrest existed, and Defendants were never put on notice of Plaintiff's disability. *See generally* [DE 15]. As a preliminary note, Plaintiff has withdrawn all claims against Defendant Officer John Doe and Defendant Supervisor John Doe. *See* [DE 20 at pg. 1]. Additionally, Plaintiff has withdrawn Counts III and IV of the Complaint, as well as his request for Permanent Injunction within Count VII. [*Id*.]. Therefore, the following counts remain pending, and are subject to the instant Motion:

> **Count I**: Fourth Amendment and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, and class-of-one Equal Protection claim against Defendant Olson only.
>
> **Count II**: Failure to Accommodate pursuant to the Rehabilitation Act and the ADA against St. John only.
>
> **Count V**: State Law Indemnification claim against St. John only.

2

    **Count VI**: Request for Declaratory Judgment under 28 U.S.C. § 2201 against Defendant Olson and St. John.

[DE 1]; [DE 20 at pg. 1].

## Legal Standard

A plaintiff survives a Rule 12(b)(6) motion to dismiss when "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

## Discussion

Central to this case are allegations of disability discrimination and a lack of probable cause. More specifically, Plaintiff claims that Defendants lacked probable cause to arrest him because his conduct during the traffic stop was a result of his autism condition rather than drugs or alcohol. [DE 1 at 1]. In support of these allegations, Plaintiff's Complaint references bodycam footage of the events that took place on July 22, 2023. [DE 1 at 1, 4]. In response, Defendants provided the Court with the bodycam footage. [DE 18].

Ordinarily, in deciding a motion to dismiss, courts are not to consider matters outside of pleadings. Fed. R. Civ. P. 12(d); *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 619 (7th Cir. 2012) (noting a trial court risks reversible error where it actually considers materials outside the

pleadings without converting a motion to dismiss into one for summary judgment (quoting *Gen. Elec. Capital v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997))); *Pannarale v. Auto-Owners Ins. Co.*, 2023 WL 2954448, at *6 (N.D. Ind. Apr. 13, 2023). However, the Seventh Circuit has recently held that a district court is permitted to rely on matters outside the pleadings, "including a video exhibit … [if it] incontrovertibly contradicts the allegations in the complaint[.]" *Esco v. City of Chicago*, 107 F.4th 673, 678-79 (7th Cir. 2024) (internal quotations omitted) (holding that "[t]he plaintiff can still contest the meaning or significance of the exhibit, but where the plaintiff's case depends on contradicting a fact that seems plain from the exhibit, the plaintiff will "need[ ] to explain her position"). Using this guidance, and noting no objection from the parties[1], the Court finds it proper to consider the bodycam footage in deciding the instant Motion. As discussed in detail below, the bodycam footage involving the parties in this case does clearly and "incontrovertibl[y] contradict[]" Plaintiff's allegations in the Complaint. *Esco,* 107 F.4th at 679.

*Count I: Fourth and Fourteenth Amendment Violations pursuant to 42 U.S.C. § 1983 and Class-of-one Equal Protection*

Count I of the Complaint alleges that Defendant Olson violated Plaintiff's Fourth and Fourteenth Amendment rights. It also alleges a class-of-one equal protection claim against Defendant Olson. A Fourth Amendment violation occurs when law enforcement conducts a search or seizure absent probable cause. U.S. CONST. AMEND IV. A violation of the Fourteenth Amendment occurs when an individual "acting under the color of state law" deprives the constitutional rights of another. U.S. CONST. AMEND. XIV.

---

[1] During the September 30, 2025 hearing on the instant motion, Plaintiff strongly encouraged the Court to rely on the bodycam footage in deciding the Defendants' Motion to Dismiss.

4

To state a false arrest claim[2] under 42 U.S.C. § 1983, a Plaintiff must show that he was arrested without probable cause. *Gaddis v. Demattei*, 30 F.4th 625, 630-631 (7th Cir. 2022). To state a valid claim for a class-of-one equal protection, the plaintiff must allege that (1) they have been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment. *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n,* 107 F.4th 693, 698 (7th Cir. 2024).

Although the elements required to prove a false arrest claim are different from those of a class-of-one equal protection claim, both claims are defeated by the existence of probable cause. *See Pryor v. Corrigan*, 124 F.4th 475, 486 (7th Cir. 2024) (holding that "[p]robable cause is an absolute defense to a false arrest claim") *and see Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) (emphasis added) (finding that "[p]robable cause is a *rational basis* for official action"); *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013).

Probable cause is a "fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) (citing *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)). An officer has probable cause when, "at the time of the arrest, the facts and circumstances within the defendant's knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense.'" *Madero v. McGuinness,* 97 F.4th 516, 522 (7th Cir. 2024) (quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)); *see also Wollin v. Gondert*, 192 F.3d 616, 623 (7th Cir.1999) (holding that "[c]ourts evaluate probable cause not on the facts as an omniscient observer would perceive them

---

[2] While not explicitly stated in Count I of the Complaint, the Court assumes that Plaintiff is alleging that the Fourth Amendment violation arises from his arrest by Defendant Olson given the allegation that "Olson seized the Plaintiff without probable cause, placing him in handcuffs [and] then transport[ing] him to a local hospital for a blood draw." [DE 1 at 4].

5

but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard").

Defendant Olson argues that Count I fails because he had probable cause to arrest Plaintiff, and in effect, a rational basis for doing so. Plaintiff's Complaint appears to be challenging the existence of probable cause for the arrest, rather than the initial stop. However, in his Response to the instant Motion, Plaintiff appears to be challenging both. [DE 21 at 3-4]. As for the initial stop, the Complaint makes only one reference to the stop itself: "[Plaintiff] was stopped for alleged [automobile violations] by Defendant Olson."[3] [DE 1 at ¶10]. This single statement does not allow the Court to draw any reasonable inference of (1) what the misconduct was or (2) that Defendant Olson is liable for such. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, the Court finds that Plaintiff has failed to state a claim as it pertains to the stop.[4]

As for his arrest, Plaintiff alleges that he told Defendant Olson that he suffered from autism, that Defendant Olson proceeded to mock and laugh at his disability, and that such arrest could only have been because he was "on the spectrum". [DE 1 at ¶¶11-12, 16]. Plaintiff represented to the Court, through his Complaint and at the September 30, 2025 hearing that the bodycam footage clearly shows that he informed Defendant Olson of his autistic condition. [DE 1 at 1].

The Court has reviewed the bodycam footage in full. Not only was there no mention by Plaintiff of his autism diagnosis, but also when asked repeatedly by Defendant Olson if he suffered from any mental impairment that could affect his driving and speech, Plaintiff was adamant that he suffered only from "ADHD." [DE 18]. Due to Plaintiff's repeated representations to the Court that the bodycam footage shows him telling Defendant Olson that he was autistic, the Court asked

---

[3] The Court notes that as it relates to Fourteenth Amendment, the parties do not dispute that Defendant Olson was acting "under the color of state law" during the events in question.
[4] On August 18, 2023, Plaintiff admitted to and was adjudged guilty of 9-21-8-2(a): Driving Left of Center, 9-21-5-2(a) Speeding, and 9-21-8-14: Following too Closely. [DE 21-2 at 2].

Plaintiff's counsel, Christopher Cooper, during the hearing where in the video these statements were made. Attorney Cooper informed the Court that he did not know, but rather that he was relying on his client's word that he made such a statement.

Federal Rule of Civil Procedure 11(b) safeguards against the filing of frivolous litigation by imposing the requirement that an attorney investigate and ascertain that the facts they are putting before the court have at least some merit. *See* FED. R. CIV. P. 11(b)(3) (instructing that "by presenting to the court a pleading … an attorney … certifies that to the best of the[ir] [] knowledge, information, and belief [that *inter alia*] … the factual contentions have evidentiary support …"); *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 543 (7th Cir. 2018) (holding that "[a]djudicators are entitled to assume that the parties present their positions in good faith and with sufficient support. This is why federal courts have Rule 11 of the Federal Rules of Civil Procedure"). The Court recognizes that at the outset of a lawsuit, the support for all factual allegations contained in a complaint may not be fully developed as discovery has not begun. However, "[t]olerance of factual contentions in initial pleadings … when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances." FED. R. CIV. P. 11(b) advisory committee's note to 1993 amendment. In this unique situation, where the events at issue are recorded and available for the parties and the Court to view, Attorney Cooper had the duty to ensure that the bodycam footage showed Plaintiff informing Defendant Olson of his autism diagnosis as he has so adamantly represented to this Court.

While the bodycam footage does not show Plaintiff informing Defendant Olson that he has autism, it does show Plaintiff slurring his speech, unable to walk in a straight line without taking many pauses, and periodically losing his balance, as well as requesting that Defendant Olson repeat

7

instructions numerous times. Based on these facts, uncontroverted by the bodycam footage, it was reasonable for Defendant Olson to believe that Plaintiff was under the influence while operating his vehicle, a violation of Indiana law. IND. CODE §9-30-5-2; §9-13-2-86. Therefore, Defendant Olson had probable cause, and a rational basis, for arresting Plaintiff. Accordingly, Count I of the Complaint is DISMISSED.[5] See *Esco*, 107 F.4th at 679 (holding that "[a] complaint that contradicts uncontroverted video is not plausible").

*Count II: Failure to Accommodate Pursuant to the*
*Rehabilitation Act and Title II of the ADA*

Count II of Plaintiff's Complaint alleges that St. John violated the Rehabilitation Act and Title II of the ADA by discriminating against him for being autistic in relation to his arrest described above. *See generally* [DE 1 at ¶¶ 26-36]. Specifically, he claims that St. John "wrongly arrested someone with a disability because they misperceived[,] because of deliberate indifference, the effects of that disability as criminal activity." [*Id*. at ¶32].

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied of the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Claims under Title II of the ADA and the Rehabilitation Act are "treated as 'functionally identical' and can be considered together …" *Culp v. Caudill*, 140 F.4th 938, 942

---

[5] While it was later determined that Plaintiff was not under the influence of alcohol or drugs at the time of the arrest, the existence of probable cause at the time of his arrest is not defeated. *See Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013) (finding that "[t]he existence of probable cause does not depend on the truth of a complaint of wrongdoing"); *Qian v. Kautz*, 168 F.3d 949, 953–54 (7th Cir. 1999) (holding that "the fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant to whether probable cause existed at the crucial time"); *Hirsch v. Burke,* 40 F.3d 900, 903 (7th Cir.1994) (officer observed plaintiff had trouble balancing himself, smelled of alcohol, appeared incoherent and had bloodshot eyes; plaintiff actually suffering from insulin shock).

(7th Cir. 2025); *McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024) ("[C]ourts construe and apply [the statutes] in a consistent manner,' and our evaluation of [a plaintiff's] claims under both [requires] the same analysis").

In order to state a claim under Title II of the ADA, Plaintiff must offer evidence that (1) he is a qualified person (2) with a disability and (3) St. John denied him access to a program or activity because of his disability. *McDaniel*, 115 F.4th at 822. Plaintiff's Complaint is void of any allegation describing what program or activity St. John denied him access to because of his autistic condition. In fact, as discussed at length above, there is no alleged evidence that either Defendant Olson or St. John were on notice of Plaintiff's autistic condition. Therefore, denying him access to a program or activity on the basis of his disability is implausible. Also unconvincing, is Plaintiff's allegation that St. John acted with deliberate indifference in arresting him because they misperceived his disability as a criminal activity. Doing so would have required St. John Police to *know* that he was autistic at the time of the arrest and Plaintiff has established no such facts. *See Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018) (holding that a "plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference. Specifically, we adopt the two-part standard applied by most other courts, "requiring both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood'"). For these reasons, Count II of Plaintiff's Complaint is DISMISSED.[6]

*Count V: State Law Indemnification Claim*

Count V of Plaintiff's Complaint seeks to name St. John as the indemnifier of Defendant Olson. [DE 1 at ¶¶ 52-53]. The issue of indemnification is not ripe until liability is established.

---

[6] The Court notes that St. John raises the argument that Title II of the ADA and the Rehabilitation Act do not apply to investigative actions of law enforcement officers, nor do they impose vicarious liability on governmental entities. [DE 15 at 18-19]. However, the Court does not find it necessary to address those arguments because Count II fails for the reasons described above.

9

This matter is only at the pleading stages. Therefore, "the proper disposition" of such a claim is dismissal. *See Medical Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010); *Cincinnati Ins. Co. v. Brigadoon Fitness, Inc.*, 2017 WL 8894623, at *2 (N.D. Ind. Oct. 25, 2017). Accordingly, Count V is DISMISSED.

*Count VI: Request for Declaratory Judgment under 28 U.S.C. § 2201*

Lastly, Plaintiff is requesting a declaration from the Court that "when he and other Hoosiers operate an automobile while autistic that they are not mocked, teased, ridiculed, harassed and arrested by police officers from suffering from Autism." [DE 1 at ¶39(c)].

Declaratory judgment actions are ripe and otherwise justiciable when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). "There must be a definite and concrete, real and substantial dispute that touches the legal relations of parties having adverse legal interests and admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*. at 377 (internal quotations omitted); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (holding that "[t]he declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative").

The relief Plaintiff is seeking is based purely on hypothetical facts. Asking the Court to declare that St. John police officers refrain from *potentially* mocking, teasing, ridiculing, and harassing other "Hoosiers" who are operating vehicles would be purely advisory, and not based on a "definite and concrete, real and substantial dispute" as the law so requires. *Amling*, 943 F.3d at 377. Therefore, Count VI of Plaintiff's Complaint is DISMISSED.

**Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants Motion to Dismiss [DE 14] in its entirety.

SO ORDERED.

ENTERED: November 3, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court